```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

**SARATOGA ADVANTAGE TRUST,**
On Behalf of Itself
and All Others
Similarly Situated,

    Plaintiffs,

v.                                     Civil Action No. 2:08-0011

**ICG, INC. a/k/a INTERNATIONAL
COAL GROUP, INC.,
WILBUR L. ROSS, JR.,
BENNETT K. HATFIELD,
WENDY L. TERAMOTO, and
WILLIAM D. CAMPBELL,**

    Defendants.


<u>**MEMORANDUM OPINION AND ORDER**</u>


    Pending is the motion of plaintiff, Saratoga Advantage Trust ("Saratoga"), for appointment of Saratoga as lead plaintiff and for approval of Finkelstein & Krinsk, LLP, as lead counsel and The Giatras Law Firm as plaintiff liaison counsel, filed March 3, 2008. On February 27, 2009, a hearing was held on the motion, with counsel for Saratoga and counsel for the defendants in attendance. For the reasons that follow, Saratoga's motion is granted.

I.

Saratoga instituted this action on January 7, 2008 by filing a class action complaint on behalf of all persons and entities who purchased shares of International Coal Group, Inc. ("ICG") between April 28, 2005 and June 8, 2006 ("class period"). Saratoga seeks recovery under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, against ICG and various officers and directors of the corporation (collectively "defendants"). According to the complaint, defendants repeatedly misrepresented ICG's safety record and its historical environmental noncompliance, as well as the company's current and future business prospects, in class period SEC filings and public statements. (Compl. ¶ 4). Saratoga contends that these misrepresentations artificially inflated the price of ICG stock prior to, and after, ICG's November 21, 2005 reorganization and stock exchange. (Id. ¶ 3).

In an attempt to curb perceived abuses in securities fraud class actions, Congress enacted the Private Securities Litigation and Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. To this end, in an action such as this, § 78u-4(a) requires the

2

court to appoint a "lead plaintiff." The lead plaintiff appointment process is intended to assure "adequate class representation" and "to discourage lawyer-driven litigation and the use of 'professional plaintiffs' who own a nominal number of shares in a wide array of public companies and who, Congress determined, allow lawyers to file abusive securities class actions on their behalf." 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1806 (2008). Defendants do not argue that Saratoga is unfit to serve as lead plaintiff. Instead, defendants' main argument is that no plaintiff is fit to serve as lead plaintiff because the case cannot proceed as a class action. This is so, according to the defendants, because the court previously appointed a lead plaintiff in a factually similar action titled <u>The City of Ann Arbor Employees' Retirement Systems v. ICG, Inc., et al.</u>, No. 2:07-cv-00226 ("<u>Ann Arbor</u>").

<u>Ann Arbor</u> was filed on August 5, 2007, and asserted claims under §§ 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77l, against ICG, the individual defendants here and six additional defendants. Claims under the Securities Exchange Act of 1934 were not asserted. Saratoga, and three other members of the proposed class, moved for appointment as lead plaintiff. Saratoga, however, did not prevail and two

other movants were appointed as co-lead plaintiffs.  On September 30, 2008, prior to class certification, Ann Arbor was dismissed on statute of limitations grounds as to all defendants but one.[1]

## II.

The PSLRA requires the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the class members . . . in accordance with this subparagraph."  § 78u-4(a)(3)(B)(i).  Such a member, or members, of a proposed class is known as the "most adequate plaintiff."  Id.  The Act creates a "rebuttable presumption" that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§ 78u-4(a)(3)(B)(iii)(I).  The defendants concede that Saratoga meets these requirements and is the presumptive most adequate plaintiff.  Under the PSLRA, the presumption afforded by § 78u-

---

[1] On September 19, 2008 the action was stayed as to defendant Lehman Brothers, Inc. by force of 11 U.S.C. § 362.

4(a)(3)(B)(iii)(I),

>    may be rebutted only upon proof by a member of the
>    purported plaintiff class that the presumptively most
>    adequate plaintiff--
>        (aa) will not fairly and adequately protect
>        the interests of the class; or
>        (bb) is subject to unique defenses that
>        render such plaintiff incapable of adequately
>        representing the class.

§ 78u-4(a)(3)(B)(iii)(II).  Defendants do not argue that, if this action is allowed to proceed as a class action, Saratoga will not adequately protect the interests of the class, or that Saratoga is subject to unique defenses.  Defendants' argument is that because a lead plaintiff was appointed in Ann Arbor, Saratoga, and the members of the class it seeks to represent, are precluded from pursuing redress as a class.  According to the defendants "the Reform Act provisions, as structured, not only create a procedure but have actual substantive effect."  (Supp. Mem. in Opp. to Mot. for Appoint. as Lead Plaintiff at 4).

The lead plaintiff appointment process was created to protect proposed class members and facilitate the just resolution of claims brought under the federal securities laws on behalf of a class of plaintiffs.  See 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1806 (2008) ("One of the key objectives of the Act is to address perceived abuses in the designation of class representatives, thereby assuring adequate

5

class representation."). The lead plaintiff appointment process was not, however, intended to be used by defendants as means to avoid class actions. Such an intention is evident from the text of the PSLRA. Proof rebutting the presumption that a member of the proposed class is the most adequate plaintiff is to be made "only . . . by a member of the purported plaintiff class." § 78u-4(a)(3)(B)(iii)(II). By its terms the PSLRA does not contemplate defendants' involvement in the lead plaintiff appointment process; yet, the court is not inclined to reject pertinent information on the lead plaintiff issue merely because of its source.[2]

As the defendants point out, "[t]he lead plaintiff's control over aspects of litigation such as discovery, choice of counsel, assertion of legal theories, retention of consultants and experts, and settlement negotiations gives the lead plaintiff

---

[2] The court is aware that some courts have found defendants to have standing to challenge motions for appointment as lead plaintiff. See e.g., King v. Livent, Inc., 36 F. Supp. 2d 187, 190-91 (S.D.N.Y. 1999). Even if, despite the text of § 78u-4(a)(3)(B)(iii)(II), defendants do have standing, this does not mean that defendants will be heard to challenge a motion for appointment as lead plaintiff on grounds unrelated to the considerations required by the PSLRA. Rebuttal is limited to evidence that the presumptive most adequate plaintiff will not adequately represent the class or is subject to unique defenses. § 78u-4(a)(3)(B)(iii)(II)(aa) and (bb). Defendants concede that neither is the case here.

decisional muscle that other members of the class lack." In re BankAmerica Corp. Secs. Litig., 263 F.3d 795, 801 (2d Cir. 2001). The defendants then note that the lead plaintiff in Ann Arbor declined to pursue the claims made by Saratoga in this action. This, however, does not mean that a lead plaintiff cannot be appointed here. Ann Arbor has been dismissed. Appointing Saratoga as lead plaintiff will in no way cause the Ann Arbor lead plaintiffs' "decisional muscle" to atrophy.

Finally, to say that because Ann Arbor was dismissed - prior to class certification - plaintiffs cannot pursue this action as a class, raises significant due process and fairness concerns. Defendants contend that if Saratoga wished to assert claims under the Securities Exchange Act of 1934 on behalf of a class, Saratoga was obliged to intervene in Ann Arbor and attempt to oust the lead plaintiffs. Defendants' argument, however, does not only apply to Saratoga. Defendants contend there can be no lead plaintiff appointed here because the action cannot proceed on behalf of a class. The only notice of the pendency of Ann Arbor afforded members of the proposed class was the notice published by the plaintiff as required by the PSLRA. See § 78u-

4(a)(3)(A)(i).[3] That notice, which was published in <u>Business Wire</u>, stated that "[t]he complaint charges ICG and certain of its officers and directors and its underwriters with violations of the Securities Act of 1933." (<u>Ann Arbor</u> Doc. # 37, ex. 4). Class members reading the <u>Ann Arbor</u> notice would not be lead to believe that to preserve their right to sue on behalf of a class under the Securities Exchange Act of 1934, they were required to move for appointment as lead plaintiff in <u>Ann Arbor</u>. Further, nothing in the PSLRA leads the court to believe that the appointment of a lead plaintiff carries the far reaching preclusive effect argued for by the defendants. <u>Ann Arbor</u>, therefore, does not act as a bar to Saratoga's appointment as lead plaintiff.

Defendants also argue that because Saratoga lost the

---

[3] Section 78u-4(a)(3)(A)(i) provides:
(i) In general. Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--
    (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
    (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

lead plaintiff contest in <u>Ann Arbor</u>, Saratoga is collaterally estopped from seeking to serve as lead plaintiff here. This contention is without merit. In <u>Ann Arbor</u> four members of the proposed class sought to serve as lead plaintiff; Saratoga is the sole movant here. Identity of the issues, which is required for collateral estoppel to apply, is thus lacking. See <u>United States v. Fiel</u>, 35 F.3d 997, 1006 (4th Cir. 1994). Further, because <u>Ann Arbor</u> was dismissed prior to class certification, Saratoga was never a party to the action and could not have challenged the lead plaintiff determination on appeal. See <u>Employers-Teamsters Loca Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors</u>, 498 F.3d 920 (9th Cir. 2007) (movant for lead plaintiff lacked standing to appeal "because the class was never certified, Appellants were not parties to the district court action and lack standing to bring this appeal."). Because Saratoga could not have obtained appellate review, the doctrine of collateral estoppel does not apply. See <u>Kircher v. Putnam Funds Trust</u>, 547 U.S. 633, 647 (2006) ("Collateral estoppel should be no bar to such a revisitation of the preclusion issue, given that § 1447(d) prevents the fund from appealing the District Court's decision."); Restatment (Second) of Judgments § 28 (1982) (collateral estoppel does not apply when "[t]he party against whom preclusion is sought, could not, as a matter of law, have obtained review of

9

the judgment in the initial action."). Consequently, collateral estoppel does not prevent Saratoga's appointment as lead plaintiff.

### III.

As noted, the defendants concede that in the event the action is allowed to proceed as a class, Saratoga is fit to serve as lead plaintiff. The court has reviewed the declaration submitted in support of Saratoga's motion for appointment as lead plaintiff and is satisfied that Saratoga has complied with the PSLRA's certification and notice requirements. See 78u-4(a). The court is also satisfied that Saratoga meets the requirements of § 78u-4(a)(3)(B) and is the most adequate plaintiff. Saratoga is accordingly appointed as lead plaintiff.

Under § 78u-4(a)(3)(B)(v) the lead plaintiff is to select lead counsel "subject to the approval of the court." The court has reviewed Finkelstien & Krinsk, LLP's resume. The firm has litigated numerous securities class actions and possesses the competence required to represent the interests of the proposed class. See In re Microstrategy Inc. Secs. Litig., 110 F. Supp 2.d 427, 438 (E.D. Va. 2000) ("a district court should approve

plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources."). Finelstein & Krinsk, LLP is approved as lead counsel. Lead plaintiffs are largely free to select whomever they wish to serve as liaison counsel. See W. Washington Laborers-Employment Trust v. Panera Bread Co., 2008 U.S. Dist LEXIS 48043, at * 5 (E.D. Mo. June 23, 2008). The Giatras Law Firm is approved as liaison counsel.

IV.

It is accordingly ORDERED that Saratoga's motion for appointment of Saratoga Advantage Trust as lead plaintiff and for approval of Finkelstein & Krinks LLP as lead counsel and The Giatras Law Firm as liaison counsel be, and it hereby is, granted. It is further ORDERED that Saratoga is appointed as lead plaintiff; Finkelstein & Krinsk, LLP is approved as lead counsel and The Giatras Law Firm is approved as liaison counsel.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.

DATED: March 20, 2009

_____
John T. Copenhaver, Jr.
United States District Judge